TIMOTHY COURCHAINE
United States Attorney
District of Arizona
ADRIANA D. GENCO
Arizona Bar No. 033397
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Email: Adriana.Genco@usdoj.gov
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No: CR-20-00096-PHX-JJT |
| Plaintiff, | |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE** |
| Frank Capri, | |
| Defendant. | |

The United States opposes Defendant Frank Capri's Motion (Doc. 345) to terminate his supervised release eighteen months early. Continued supervision of Defendant is warranted to protect the public from further crimes, and early termination is not in the interest of justice. This Court should deny Defendant's Motion.

## I.     Facts and Procedural Background

Defendant and his co-conspirators engaged in a scheme to defraud developers by inflating financial projections and reported cost of construction of restaurants. Defendant controlled and oversaw all decisions associated with the restaurants that were part of the scheme. (Doc. 240 at ¶ 7.) At Defendant's direction, employees fabricated construction draw paperwork submitted to property developers. At Defendant's direction, co-conspirators forged signatures of contractors, purchased a stamp machine to produce notary stamps, and "established virtual office addresses and phone numbers in the event a developer attempted to verify the information listed on the paperwork." (*Id.* at ¶ 16.) The

scheme ended in 2015, with several pending lawsuits by the developers, and a loss of over $12,000,000.

Around the same time, Defendant devised a new scheme, also including restaurants and developers, but with a new name. Defendant purposely kept his ownership of the new business hidden to avoid the association with the prior scheme and lawsuits. Defendant, however, was the decision maker on all aspects of the business. (*Id.* at ¶ 24.) As a result of the second scheme, developers disbursed over $5,000,000 for the development of restaurants that never opened. (*Id.* at ¶ 30.) During the course of the schemes, funds were diverted from business accounts to Defendant's personal accounts, and to pay for Defendant's lavish lifestyle. (*Id.* at ¶ 31.)

Faced with a 16-count indictment, Defendant pleaded guilty to Conspiracy to Commit Wire Fraud, 18 U.S.C. § 371, and Tax Evasion, 26 U.S.C. § 7201. (Doc. 257.)

On February 24, 2022, Defendant was sentenced to five years of imprisonment followed by three years of supervised release. (Doc. 258.) The Court imposed the following relevant special conditions:

- Special Condition #3 prohibits Defendant from "entering into any financial contracts over $500 without the prior approval of the probation officer."
- Special Condition #4 requires Defendant to provide his probation officer "access to any requested financial information and authorize the release of any financial information."
- Special Condition #7 restricts Defendant's ability to engage in "any occupation in which [he is] responsible for the management of financial transactions or fiduciary responsibility."

(Doc. 258 and 321.) Defendant was also ordered to pay $19,385,429.80 in restitution. (Doc. 321.)

Defendant's term of supervised release began on October 5, 2023. He has served half of his three-year supervised release term. On April 8, 2025, Defendant filed a motion for early termination of his supervised release. (Doc. 345.) In support of his motion,

Defendant cites his performance while on supervised release. (*Id.* at 2.) Defendant also compares the cost to taxpayers to keep him under supervision to the amount of restitution Defendant can be expected to pay in the remaining eighteen months of his imposed term of supervision. (*Id.* at 3-4.)

Defendant's probation officer, Trevor Richins, has advised undersigned counsel he opposes Defendant's request for early termination due to the number of victims involved and the amount of restitution owed.

## II.    Argument

Courts have "broad discretion" to grant or deny motions to terminate supervised release. *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014). To apply the "correct legal standard" under 18 U.S.C. § 3583(e), courts must consider the specified sentencing factors in 18 U.S.C. § 3553(a), *id.*, including "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). A large sum of unpaid restitution can weigh against early termination. *United States v. Oak*, 398 F. App'x 274, 274–75 (9th Cir. 2010) (denial of defendant's motion for early termination of supervised release proper when district court found defendant "owes more than $200,000 in restitution"). Defendant, like the defendant in *Oak*, owes a large sum in restitution, more than $19,134,797.11.[1]

But restitution is not the only factor weighing substantially in favor of Defendant's continued supervision. The Court should also consider "the nature and circumstances of the offense and the history and characteristics of the defendant," the need for deterrence, and the "need to protect the public," 18 U.S.C. § 3553(a)(1), (2)(B)–(C). Before granting early termination, a court must be "satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *see also United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999) (*"*The conjunction 'and' . . . clearly indicates that a district court must conclude that the early termination of supervised

---

[1] The total amount of outstanding restitution was provided by probation officer, Trevor Richins.

release is warranted both by the individual's conduct and also by the interest of justice.").

Defendant has not shown that relief is warranted. *See United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir. 2006) (defendant-movant bears the burden to show entitlement to early termination). Defendant's special release conditions requiring him to provide his probation officer access to his financial information, obtain approval for financial contracts, and restricting any employment managing financial transactions are intended to protect the public from further victimization by the Defendant. Keeping the safeguards in place a little longer will serve to "protect the public from further crimes," 18 U.S.C. § 3553(a)(2)(C), especially in light of "the nature and circumstances of [Defendant's] offense," § 3553(a)(1). The conditions of supervision remain "reasonably necessary to accomplish one of the legitimate goals of supervised release." *See United States v. Hohag*, 893 F.3d 1190, 1193 (9th Cir. 2018).

Defendant's performance while under supervision does not negate his offense conduct, which created the need for the special conditions imposed. That Defendant has not incurred any violations does not minimize the risk he poses. "If 'unblemished' post release conduct warranted termination of supervised release, then the exception would swallow the rule, i.e., diligent service of the full period of supervised release imposed at sentencing." *United States v. Phillips*, 2024 WL 3826306, at *2 (E.D. Tenn. Aug. 14, 2024) (citations omitted). "Full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." *United States v. Laughton*, 658 F. Supp. 3d 540, 544 (E.D. Mich. 2023). This is especially true here because this is not Defendant's first conviction or his first time on supervised release.

Defendant's progress on supervision is promising, but it is not enough. *See United States v. Frazier*, 2021 WL 1541639, at *3 (D. Ariz. Apr. 20, 2021) ("Here, although the evidence suggests that the 'conduct of the defendant' has been exemplary since Frazier's supervised release term began in August 2017, that is only part of the equation.). Given the severity of Defendant's conduct, including two separate schemes that spanned a period of

seven years, it is important that Defendant serve the full term of his supervision. The Court need not compare the cost of keeping Defendant under supervision to the amount of restitution Defendant will pay, but rather consider the need for continued supervision.

Finally, Defendant raises the ongoing difficulty to secure employment, in part due to his probation officer's disapproval of certain positions. Whether a position is acceptable can be addressed through a motion to modify or clarify a particular condition. However, as Defendant is actively applying for disability, it appears this is a not a present concern. (Doc. 345 at 2.)

### III.    Conclusion

Defendant's purported reasons for the instant motion—good behavior and the cost to taxpayers for his continued supervision—are not sufficient grounds for termination given Defendant's circumstances. The United States therefore asks this Court to deny Defendant's motion for early termination of supervised release.

Respectfully submitted this 22nd day of April, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/Adriana Genco*
ADRIANA D. GENCO
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing. I served the attached document using the CM/ECF system on the following, who is a registered participant of the CM/ECF System:


Stephen Wallin,
*Attorney for Defendant*


*s/D. Parke*
U.S. Attorney's Office

- 6 -