**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-20-00096-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Frank Capri, *et al.*, | |
| Defendants. | |

At issue is Defendant Frank Capri's Motion for Early Termination of Supervised Release (Doc. 345), to which the government filed a Response in opposition (Doc. 347), and in support of which Defendant filed a Reply (Doc. 348). The Court sentenced Defendant to a term of 60 months in custody followed by 36 months of supervised release for conspiracy to commit wire fraud and tax evasion that resulted in losses to various victims and the government of over $19 million. Defendant completed his term of imprisonment on October 5, 2023, and thereafter commenced serving his term of supervision. At this writing, Defendant has completed nearly 21 months of the 36-month term of supervision.

In his Motion, Defendant seeks immediate termination of his supervised release, noting in particular one of the terms of supervision—Special Condition No. 7, which restricts him from any job in which he would be "responsible for the management of financial transactions or [have] fiduciary responsibility." (Doc. 321 at 4.) Defendant asserts that this condition of his supervision has resulted in his inability to secure

employment, as Defendant's probation officer has found positions offered to Defendant to contain such prohibited responsibilities and therefore to be unacceptable employment for Defendant. (Doc. 345 at 2.) Additionally, Defendant argues that, because he is only paying $100 per month in restitution against an obligation of over $18 million, continuing his supervision will result in only a drop in the restitution bucket, yet that supervision will cost the government significantly more to continue for the next 15 months.

Both the government and Defendant in their motion practice have clarified that the supervising probation officer has based his lack of support for early termination on the ground that so much restitution is owed. And the Court understands that, at a rate of $100 per month, what Defendant is paying and would continue to pay represents a *de minimus* fraction of the total restitution. That consideration is not what this Court's decision hinges upon.

First of all, restitution in any amount, while it certainly is intended to go toward making a victim or victims whole, also has the purpose and effect of requiring a defendant to revisit on a monthly basis, every time he writes that check, what he did to his victims. That purpose is not affected by the minimum amount of the check he may write. But even that is not the Court's central concern with regard to the decision here.

Second, and what is core to the Court's decision, is the Court's consideration of the purposes of the sentence imposed under 18 U.S.C. § 3553(a), with a particular focus on the outsized factors in this case including the nature of the offense and the quantum of the harm visited upon the victims by the Defendant's offenses of conviction, and the need to protect the community from future offenses by him like this. As the government recounted in its Response and as the Court is aware from sentencing in this matter, Defendant orchestrated, and was the central manager of a scheme that spanned several years, and involved the use and coordination of multiple defendants, including persons with specialized skills to include the law, finance, and accounting, to take victims' money. And central to his scheme was his access to—and control of—other people's funds through the management and control of a business. The Court, therefore, will be

particularly vigilant about imposing and enforcing conditions of supervision that guard against this danger above all others, in light of the nature of the offense of conviction, for as long as it judges necessary to provide that protection to the community, or until the expiration of the term of supervision the Court imposed in its sentence, whichever comes first.

The Court acknowledges that the Defendant's performance on supervision to this point, as reflected by a lack of reported problems, may portend a meaningful positive change in the Defendant and how he will conduct himself going forward, and it hopes that is so. But it has not seen anything to this point that would suggest justification to remove supervision in general and in particular this important and tailored protection to the public as set forth in Special Condition No. 7.

**IT IS THEREFORE ORDERED** denying Defendant's Motion for Early Termination of Supervised Release (Doc. 345) without prejudice.

Dated this 30th day of June, 2025.

Honorable John J. Tuchi
United States District Judge